# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3575

_____

Rodney Raymond

*Plaintiff - Appellant*

v.

Board of Regents of the University of Minnesota,
individually in their official capacities;
The University of Minnesota

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 15, 2016
Filed: January 31, 2017

_____

Before BENTON and SHEPHERD, Circuit Judges, and STRAND,[1] District Judge.

_____


STRAND, District Judge.


_____

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, sitting by designation.

Rodney Raymond (Raymond) brought this action against the Board of Regents of the University of Minnesota, individually in their official capacities (Regents), and the University of Minnesota (University) pursuant to 42 U.S.C. § 1983, seeking damages and injunctive relief. The district court[2] dismissed Raymond's amended complaint. This appeal followed. We affirm.

## I.     BACKGROUND

### A.     Raymond's Amended Complaint[3]

Raymond was employed as a wellness director and fitness instructor at the University's Duluth campus. Beginning in 2009, the University received reports that Raymond was violating various school policies, including policies related to sexual harassment. Raymond denied the allegations and the University conducted investigations. Each investigation concluded Raymond had indeed violated school policies. He appealed these decisions to varying degrees, with each appeal being determined against him.

Raymond alleged that one of the investigations was tainted by bias and involved collusion between the investigator and complainant. A University panel agreed and decided to hire a new investigator. Raymond objected to a new investigation on double jeopardy and due process grounds. The University denied Raymond's objection. Raymond then requested to be involved in selecting the new investigator. This request was denied. The new investigator was hired based, in part, on the recommendation of the University's legal counsel. Raymond requested the

---

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[3]We must accept the factual allegations set forth in the amended complaint as true for purposes of deciding whether the district court properly dismissed that complaint. *See e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

investigator recuse himself given that the attorney who had recommended him would be the "prosecutor" against Raymond. This request was denied.

Raymond alleged the new investigation was flawed because it went beyond the scope of the allegations and was not justified by University policy. According to Raymond, the new investigator engaged in unprofessional communications with Raymond's counsel, failed to investigate the collusion in the original investigation, exceeded the scope of his investigatory mandate, distorted witness statements and came to erroneous conclusions. He also alleged that an appellate panel had found the investigator "over-reached in his attempt to show that [Raymond] should be disciplined by [the University.]" *See* Amended Complaint at ¶ 9. During the investigative process, Raymond contends he never had the opportunity to examine or cross-examine witnesses.

On November 19, 2012, Raymond submitted a written request to the Regents that they intervene as a court of appeal and provide him with a hearing to address his grievances with respect to the investigation. The Regents denied this request through written correspondence dated December 12, 2012. On April 10, 2013, the University informed Raymond that the investigation concluded there was "just cause" to discipline him for violations of University policy. Raymond requested the opportunity to respond to this letter, but was informed on April 25, 2013, that the University had decided to terminate his employment.

On May 1, 2013, Raymond filed a petition with the Office of Conflict Resolution (OCR) challenging the termination and requesting a hearing. Around this time, news reports were purportedly circulating regarding his discharge and the sexual harassment allegations. On August 8, 2013, the OCR issued a jurisdictional decision to determine the scope of panel review in addressing the grounds for Raymond's discharge. On October 13, 2013, the Provost intervened and overturned the OCR's jurisdictional decision by limiting the scope of the hearing to exclude the

sexual harassment allegations from further review. Raymond contends these allegations were a basis for the University's termination decision.

On November 7, 2013, Raymond requested that the presiding hearing officer recuse herself because she had been privy to the investigative report that led to Raymond's discharge, which included the sexual harassment allegations. In addition, he requested a new hearing panel and the submission of a redacted report excluding the sexual harassment allegations. The University denied these requests.

On February 5, 2014, Raymond withdrew from the hearing process "based on the futility of the process and its inherent unfairness and bias towards him, and because of the University's bad faith in its dealings with him." *See* Amended Complaint at ¶ 21. Raymond contends that the University used the process to harass him and discourage his legitimate defenses to discharge. He alleges that if he had continued to engage in the process, which he claims was unfair and biased, he would have been irreparably injured.

On September 19, 2014, Raymond requested a post-termination hearing before the Regents to address all the grounds for his discharge. He also requested the Regents consult outside counsel because the University's counsel had been involved in the investigative, "prosecutorial," and decision-making processes. These requests were denied.

Raymond's amended complaint asserted two claims of procedural due process violations—one against his liberty interest and the other against his property interest. He sought damages and injunctive relief.

### B. Proceedings Below

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), the University and Regents moved to dismiss the amended complaint for failure to state

a claim upon which relief could be granted and lack of subject matter jurisdiction. The district court granted the motion. It dismissed Raymond's claims against the University on Eleventh Amendment grounds and similarly ruled that the Eleventh Amendment prohibits Raymond from seeking damages from the Regents. Raymond's appeal does not address these issues.

With regard to injunctive relief, the district court found Raymond had failed to state a due process claim upon which relief could be granted. In doing so, the court analyzed whether the University's pre-termination and post-termination procedures were adequate and concluded they were. The court also found that Raymond failed to exhaust state remedies. The court rejected Raymond's allegation that exhaustion would have been futile, noting that futility must be based on certainty rather than the subjective belief of the person asserting futility. The court also concluded that the futility exception is not available in the context of a § 1983 procedural due process claim. Raymond appeals the dismissal of his claims for injunctive relief.

## II. DISCUSSION
### A. Standard of Review
"'Whether a complaint states a cause of action is a question of law which we review on appeal de novo.'" *Packard v. Darveau*, 759 F.3d 897, 900 (8th Cir. 2014) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 936 (8th Cir. 2012)). Under Rule 12(b)(6), a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "We will affirm the dismissal if the complaint fails to allege facts sufficient to 'state a claim to relief that is plausible on its face.'" *Hopkins v. City of Bloomington*, 774 F.3d 490, 491-92 (8th Cir. 2014) (quoting *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Raymond's Due Process Claims

Raymond alleges that he was deprived of liberty and property interests without due process when his employment with the University was terminated. The Regents and University do not challenge the adequacy of Raymond's alleged interests. Rather, they argue Raymond did not satisfy a condition of his procedural due process claims—exhaustion of state remedies. For this reason, they argue the district court's decision should be affirmed.

"[T]he exhaustion requirement is an affirmative defense that a defendant must plead and prove." *Nash v. Lappin*, 172 F. App'x 702, 703 (8th Cir. 2006) (per curiam). However, "[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoting *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008)) (alterations in original). "Generally, a plaintiff is not required to exhaust state administrative remedies as a prerequisite to bringing an action pursuant to § 1983." *Hopkins*, 774 F.3d at 492 (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)). However, this court has "recognized an exception to *Patsy*'s general rule that exhaustion of state remedies prior to bringing a section 1983 claim is not required." *Id.* (quoting *Keating v. Neb. Pub. Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009)). "Under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." *Id.* (quoting *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000)).

"[A]n employee who fails to request post-termination process cannot later sue for having been deprived of it." *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006); *see also Krentz v. Robertson*, 228 F.3d 897, 904 (8th Cir. 2000) ("[A]n employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the

state."). "[T]his requirement is distinct from exhaustion requirements in other contexts." *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). "Rather, this requirement is necessary for a procedural due process claim to be ripe for adjudication." *Id.* A plaintiff "cannot complain of a violation of procedural due process when he has not availed himself of existing procedures." *Anderson v. Douglas Cnty.*, 4 F.3d 574, 578 (8th Cir. 1993).

Although Raymond's amended complaint focuses primarily on the adequacy of the post-termination procedures, we must first consider whether he has sufficiently alleged a pre-termination procedural due process violation, which would not require exhaustion. *See Keating*, 562 F.3d at 929 ("[I]t is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process.") (emphasis in original)). In the context of a public employee's discharge, a pre-termination hearing is required, although it "need not be elaborate." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985); *see also Christiansen v. West Branch Comm. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012) ("Due process does not require elaborate pre-termination procedures, especially where meaningful post-termination process is available.").

"The essential requirements of due process . . . are notice and an opportunity to respond." *Loudermill*, 470 U.S. at 546. "To satisfy minimal due-process requirements at the pre-termination stage, a public employer must give the public employee oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Smutka v. City of Hutchinson*, 451 F.3d 522, 526-27 (8th Cir. 2006) (internal quotations omitted). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*

Raymond alleges that when the University began investigating the alleged violations of school policies, he denied the allegations and appealed the conclusions, with each appeal being determined against him. Raymond presented evidence of bias and collusion to the University, which led an appellate panel to determine that investigation could not be used against Raymond. Raymond objected to a new investigation on double jeopardy and due process grounds. His request was denied. He then requested to be involved in the selection of a new investigator. That request was denied. Finally, he requested that the new investigator recuse himself. That request was also denied. Following the second investigation, Raymond submitted a written request to the Regents to sit as a court of appeal and provide him a hearing to address his grievances. That request was denied through written correspondence. Raymond then received a letter dated April 10, 2013, advising him that the investigative report found "just cause" to discipline Raymond for violating school policies. Raymond requested an opportunity to respond, but received a letter on April 25, 2013, notifying him his employment had been terminated.

These allegations, taken as true from Raymond's amended complaint, fail to state a claim of a pre-termination due process violation. Indeed, they establish the opposite. Raymond was advised of the allegations and evidence against him. He had the opportunity to respond, and did respond, to the allegations. Indeed, the University agreed with his complaints of bias and collusion as to one investigation and ordered a new investigation. During the subsequent investigation, the University and Regents responded to Raymond's requests. His only complaint about this process is that he was never afforded the opportunity to examine or cross-examine witnesses. This type of formal process is not required prior to termination. *See Mathews v. Eldridge*, 424 U.S. 319, 343 (1976) (noting that "something less than an evidentiary hearing is sufficient prior to adverse administrative action."). Because Raymond did not sufficiently plead a pre-termination procedural due process violation, exhaustion of state remedies is required to proceed on his post-termination claim.

Raymond's amended complaint acknowledges that he withdrew from the post-termination OCR process by withdrawing his petition on February 5, 2014. Therefore, he did not exhaust state remedies. However, Raymond contends this failure is not detrimental to his claim. He alleges that he withdrew from the process "based on the futility of the process and its inherent unfairness and bias towards him, and because of the University's bad faith in its dealings with him." *See* Amended Complaint at ¶ 21. Raymond argues we should recognize futility as an exception to the exhaustion requirement in the context of a procedural due process claim and allow him to proceed with his lawsuit.

## C.  Futility

Raymond argues the OCR process was futile for two reasons: (1) he did not have the opportunity to confront and cross-examine witnesses and (2) the Provost's jurisdictional ruling denied him a name-clearing hearing on the sexual harassment allegations that were part of the basis for his termination.[4] For these reasons, he argues this court should recognize a futility exception to the exhaustion requirement.

This court has recognized exceptions to exhaustion requirements in other contexts. *See, e.g., Ace Property and Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006) ("A party may be excused from exhausting administrative remedies if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile . . . or if the issues to be decided are primarily legal rather than factual."). An administrative remedy is futile "if there is doubt about whether the agency could grant effective relief." *Id.* Notably, *Ace* did not involve a § 1983 procedural due process

---

[4]The record is silent as to whether Raymond ever complained of these perceived deficiencies to the University or Regents prior to withdrawing his OCR petition.

claim, but an alleged breach of contract by an administrative agency. *Id.* at 995. Exhaustion of administrative remedies was mandated by statute. *Id.*

This court has never held that the exceptions recognized in *Ace* apply in the context of § 1983 procedural due process claims. Raymond suggests, however, that none of our cases preclude it. He distinguishes *Winskowski*, 442 F.3d at 1110, a case the district court cited for the proposition that an individual who did not take advantage of a post-termination process cannot claim that it was inadequate. Raymond argues *Winskowski* is inapplicable because unlike the *Winskowski* plaintiff, who failed to request any post-termination process, Raymond requested that process and withdrew from it only when he concluded that it was futile. He cites *Schleck v. Ramsey Cnty.*, 939 F.2d 638 (8th Cir. 1991), to argue that futility should be recognized as an exception in this context. In *Schleck*, this court held that there was no due process violation when county employees declined a post-termination hearing. *Schleck*, 939 F.2d at 643. Raymond notes that the post-termination process in that case explicitly included the right to cross-examine witnesses and respond to the charges against them, *id.*, and asserts that those rights were omitted from the post-termination procedures here. Essentially, Raymond suggests that if a post-termination process does not guarantee certain rights (*i.e.*, the right to cross-examine witnesses and respond to charges), the claimant should not have to exhaust remedies and should be permitted to allege futility.

With regard to the post-termination process here, paragraph 9 of the University's conflict resolution procedures for civil service employee complaints[5] provides, "[t]he hearing panel will provide a fair opportunity for the petitioner and

---

[5]"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co. Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

the respondent to present their views and information from witnesses." *See* Appellant's App'x at 36. Even if the opportunity to cross-examine witnesses at the OCR hearing was ambiguous, that does not justify foregoing the process altogether on grounds of futility. *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009) ("The futility exception is narrow—the plan participant must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision.") (internal quotations omitted). Proper grounds of futility include the situation in which an agency may be "unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented" or "an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested." *See Bartlett v. U.S. Dept. of Agriculture*, 716 F.3d 464, 473 (8th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992), *superseded by statute*, Prison Litigation Reform Act of 1995, 42 U.S.C. §1997e *et seq.*, *as recognized in Woodford v. Ngo*, 548 U.S. 81 (2006)).

Raymond has not sufficiently alleged that proceeding with the OCR hearing would have been futile. He has only speculated that he would not be allowed to cross-examine witnesses and that the OCR panel would not consider the sexual harassment allegations. *See Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 898 (8th Cir. 2009) ("[u]nsupported and speculative claims of futility do not excuse a claimant's failure to exhaust his or her administrative remedies.") (internal quotations omitted). Raymond could have challenged these issues at the OCR hearing and, if the outcome was unfavorable, appealed them to the Provost. He then could have sought certiorari review by the Minnesota Court of Appeals or demanded binding arbitration in accordance with the University's conflict review procedures. At any of these stages, the presiding body or individual could have ruled in Raymond's favor. None of the allegations establish,

with certainty, that the final outcome of the process would have been adverse to Raymond. For this reason, Raymond's futility argument fails.[6]

## III.  CONCLUSION

Raymond's § 1983 procedural due process claims were properly dismissed. The judgment of the district court is affirmed.

SHEPHERD, Circuit Judge, concurring.

I concur in the judgment of the majority affirming the dismissal of Raymond's § 1983 procedural due process claims but I write separately to express two points. First, aside from a few sweeping generalities,[7] Raymond's briefing invokes only post-termination due process requirements and he does not appeal the district court's ruling as to the pre-termination procedures. I therefore would refrain from any discussion of Raymond's pre-termination due process rights. Jasperson v. Purolator Courier Corp., 765 F.2d 736, 740 (8th Cir. 1985) (issues not raised in a party's brief are deemed abandoned).

Second, regarding post-termination due process, Raymond's futility argument is unsupported. As the majority notes, the cases recognizing futility as an exception to the exhaustion requirement do not involve § 1983 procedural due process claims. See McCarthy v. Madigan, 503 U.S. 140, 149 (1992) (Bivens claim for money damages); Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009) (ERISA action); Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp., 440 F.3d

---

[6] Because Raymond's allegations are insufficient to support a claim that exhaustion would have been futile, we need not decide whether futility is available as an exception to the exhaustion requirement in a procedural due process claim.

[7] For example: "Raymond claims that the entire process was infected from start to finish." And: "Raymond was never, pre-termination or post-termination, . . . given the right to confront and cross-examine [witnesses]."

992, 1000 (8th Cir. 2006) (breach of contract claim under the Federal Crop Insurance Act). Rather, the law in this context is settled: Futility is not an exception to the requirement that a litigant exhaust his state remedies in order to pursue a § 1983 procedural due process claim. See Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 935-36 (8th Cir. 2012) ("[A] government employee who chooses not to pursue available post-termination remedies cannot later claim, via a § 1983 suit in federal district court, that he was denied post-termination due process."); Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006) ("[A]n employee who fails to request post-termination process cannot later sue for having been deprived of it."). Our court rejected an argument similar to Raymond's futility claim in Riggins v. Board of Regents of University of Nebraska, 790 F.2d 707, 711-12 (8th Cir. 1986). In that case, a terminated employee alleged that the University's process for post-termination grievances was constitutionally insufficient because it would not have allowed her to confront or cross-examine witnesses. Id. at 711. After concluding that the process would have been adequate, the court stated that, nonetheless, the plaintiff "chose not to file a grievance. In so choosing, she waived any claim that the grievance procedure did not afford her the process she was due." Id. at 712. Since Riggins, we have consistently held that a plaintiff cannot bring a § 1983 procedural due process challenge to the adequacy of post-deprivation remedies without first exhausting those remedies. Hopkins v. City of Bloomington, 774 F.3d 490, 492 (8th Cir. 2014); Christiansen, 674 F.3d at 935-36; Winskowski, 442 F.3d at 1110.

Because Raymond's invocation of futility lacks legal authority, there is no need to analyze whether the University's post-termination procedures were in fact futile. I instead conclude that Raymond waived his § 1983 procedural due process claim by failing to pursue the post-termination processes available to him and his claim therefore fails as a matter of law. Christiansen, 674 F.3d at 936.

_____